**Mrs. Elmer LANDS, Appellant,**

**v.**

**Erastus BOYSTER, Respondent.**

**Mr. and Mrs. Elmer LANDS, Appellants,**

**v.**

**Erastus BOYSTER, Respondent.**

**No. 52246.**

Supreme Court of Missouri, Division No. 1.

Sept. 11, 1967.

Roberts & Roberts, by Raymond R. Roberts, Farmington, for appellants.

Samuel Richeson, Dearing, Richeson, Weier & Roberts, Hillsboro, for respondent.

HIGGINS, Commissioner.

Action by Mrs. Elmer Lands for $25,000 damages for personal injuries consolidated with action by Mr. and Mrs. Elmer Lands for $25,000 damages for wrongful death of a minor daughter. Verdict was for defendant in both cases with judgment accordingly, from which plaintiffs appeal.

The incident out of which these actions arose occurred May 21, 1964, on East Jefferson Street in Potosi, Missouri. East Jefferson is an east-west street, twenty feet wide, level, and of blacktop pavement. The south shoulder is about two feet wide with a ditch eighteen inches to three feet deep beyond; the north shoulder averages five feet in width and is seven feet wide at the scene. Beyond the north shoulder is Burton Creek.

Mr. Lands, aged 36, was driving his 1958 Ford eastwardly on East Jefferson at ten to fifteen miles per hour. His wife, aged 31, was a front-seat passenger; his three sons and a neighbor boy, all children, were in the rear seat. All occupants of the Lands car intended to stop along East Jefferson to seine minnows from Burton Creek and proceed to Clearwater Lake to fish.

Mr. Boyster, aged 60, was operating his 1949 Chevrolet pickup also eastwardly on East Jefferson at fifteen to twenty miles per hour. He first saw the Lands vehicle when he was three hundred to four hundred feet to the rear of it, and it was then three hundred yards west of the place of collision. Mr. Boyster closed the distance between the vehicles, then slowed to Mr. Lands's speed and maintained his distance. When Mr. Lands was fifty feet from the place of collision, Mr. Boyster was twen-

ty-five to thirty feet behind him; when Mr. Lands turned to the left side of the road, Mr. Boyster was between fifteen and twenty-five feet behind him. Mr. Lands said he used his left blinker signal; Mrs. Lands said she heard it clicking; Mr. Boyster said no signal was given. Mr. Boyster described Mr. Lands's turn as "whipping" to the left. He applied his brakes and turned right sharply. Mr. Lands stated he looked into his side mirror and did not see Mr. Boyster; he did not look into his windshield mirror prior to turning left.

The Lands car was struck on the right rear fender by the left front fender of the Boyster truck. The car sustained damage also to the taillight, quarter panel, deck lid, and bumper on the right rear side. The truck's radiator and grill were damaged and the door was hard to close. The truck stopped immediately in the middle of the street; the car moved forward about twenty feet and came to a stop with its left wheels on the north shoulder.

Respondent concedes that there was evidence from which the jury could have found that Mrs. Lands sustained personal injuries, including concussion and interruption of her pregnancy. The child, Myra Denise Lands, born by Caesarean section upon interruption of the pregnancy, died several hours after its premature delivery.

Appellants contend that giving Instruction No. 8 on contributory negligence was error because "the evidence clearly fails to demonstrate any causal relationship between Mr. Lands alleged negligence and the collision. It also fails to establish any failure of lookout."

Instruction No. 8 directed a verdict for defendant in the wrongful death case of Mr. and Mrs. Lands if the jury believed:

"First, Elmer Lands either:

"failed to keep a careful lookout, or

"failed to signal his intention to turn and slow his vehicle, and

"Second, Elmer Lands' conduct, in any one or more of the respects submitted in Paragraph First was negligent; and

"Third, such negligence of Elmer Lands directly caused or directly contributed to cause the death of Myra Denise Lands. (MAI 28.01 modified by 17.06 * * *.)"

The negligent acts attributed to Elmer Lands by this instruction are supported by the record as required by Civil Rule 55.10, V.A.M.R., and Committee's Comment, MAI 28.01, and may be found to be acts " 'such as to enter into and form the direct, producing and efficient cause of the casualty, and absent which the casualty would not have happened.' " Danner v. Weinreich, Mo., 323 S.W.2d 746, 750[2]; 65A C.J.S. Negligence § 129, pp. 92–99.

■ According to Mr. Boyster, just prior to the collision he was following Mr. Lands at a distance of about fifteen feet at a speed of fifteen or twenty miles per hour when "all at once he (Mr. Lands) swung it over to the left. * * * He just cut it over right quick," and "slowed it down. * * * I swung mine to the right and hit for the brake to try to miss him." At another time he described the relation of the two vehicles: "When he cut it right over to the left I judge I was, oh, twenty, twenty-five feet when he just wheeled her right over like that. * * * He just cut it—whipped, just whipped it right across the road to the left." Mr. Boyster saw no turn or slow signal from Mr. Lands by lights or otherwise, and he saw no brake light on the Lands vehicle. Mr. Lands said he looked into his side mirror but could not remember looking into the windshield mirror which admittedly would have revealed an automobile traveling directly at his rear or to his right rear, as was Mr. Boyster. This, together with the previous statement, supported the submission of the acts of contributory negligence attributed to Mr. Lands; and it would be for the jury to say whether those acts "caused or

directly contributed to cause" the collision and injuries resulting in the death of Myra Denise Lands, or whether "defendant (negligently) permitted his automobile to come into collision with the rear of plaintiff's automobile" (Instruction No. 5) and caused Myra's death because, if Mr. Lands had looked and seen defendant, he could, among other things, have warned of his intention to slow or turn, or not have turned or slowed at all, thus avoiding collision. Myers v. Searcy, Mo., 356 S.W.2d 59, 62–63[6], " 'The driver contemplating a left turn must keep a vigilant lookout * * * for vehicles which may be following him' "; Reed v. Shelly, Mo.App., 378 S.W.2d 291, 296[6], " * * * a driver who intends to turn left must make a proper observation to the rear to ascertain whether another vehicle is approaching from the rear in such close proximity that a left turn cannot be made with reasonable safety," and "then, he must give an appropriate signal of his intention to change direction." Chandler v. Mueller, Mo., 377 S.W.2d 288, cited by appellants, is not in point because there was no evidence to support an inference of failure to maintain a lookout as compared to this case where to look into the windshield mirror would have been to see to the rear in the area of defendant's truck.

■ Appellants' brief contains a contention that the "evidence fails to support the submission of Mr. Lands' contributory negligence as a defense against the separate cause of action of Mrs. Lands," arguing that it "compels a verdict against Plaintiffs on both cases if Mr. Lands was contributorily negligent. It does not distinguish between the two cases." No such contention was presented to the trial court by specific objection at trial under Civil Rule 79.03, V.A.M.R. Nor was any such allegation of error presented to the trial court in appellants' motion for new trial under Civil Rule 70.02, V.A.M.R. Accordingly, the point is not preserved for review. Overton v. Tesson, Mo., 355 S.W.2d

909, 913–914[6]; Wolfe v. Harms, Mo., 413 S.W.2d 204, 213[17].

Appellants charge error in permitting Dr. Cresswell to testify for defendant "that he had read that Mrs. Lands had a hypo-pituitary and that this condition would be expected to produce the difficulty in Mrs. Lands pregnancy when there was no evidence Mrs. Lands suffered from a pituitary deficiency."

■ One of the issues of causation was whether the child's death was due to the collision or to some other cause. Dr. Cresswell, in response to a lengthy hypothetical question containing an assumption that Mrs. Lands suffered from a hypopituitary condition, gave his opinion that he "would expect her to have difficulty at the time of labor, and I cannot believe the accident had anything whatever to do with the difficulty of her labor." Appellants' position is that this was improper because it permitted an expert to base an opinion on facts not in evidence and not of substantial and probative force, 32 C.J.S. Evidence § 546(63), p. 268; Craddock v. Greenberg Mercantile, Inc., Mo., 297 S.W.2d 541, 548[8]; Gaddy v. Skelly Oil Co., 364 Mo. 143, 259 S.W.2d 844, 849[11]; that it permitted an expert opinion to be based upon opinions, inferences, or conclusions of another, 32 C.J.S. Evidence, supra; that it permitted an opinion based upon mere conjecture, 32 C.J.S. Evidence § 546(64), p. 271; that it permitted an assumption of fact not in evidence, 32 C.J.S. Evidence § 552, p. 537.

The foregoing are all proper criteria in the admission of expert opinions, but they do not support this charge of error.

■ The evidence of pituitary insufficiency is in the hospital record in evidence (Allen v. St. Louis Public Service Co., 365 Mo. 677, 285 S.W.2d 663, 55 A.L.R.2d 1022) from Jewish Hospital in St. Louis where Mrs. Lands was hospitalized March 4, 1964, to March 11, 1964. The discharge

note stated among other things: " * * * Dr. Meyerhardt felt the amenorrhea (absence or abnormal stoppage of the menses) might be on a pituitary insufficiency basis. * * * Discharge diagnosis: * * * Amenorrhea, etiology undetermined." Defendant had no burden to disprove plaintiffs' case, but was entitled to show all possible causes of Mrs. Lands's condition. It was not improper, therefore, for defendant to ask his expert witness if a condition, assumed from other evidence, might, could, or would produce a certain result, because an expert's view of possibility or probability is often helpful to the jury and proper even though such assurance of possibility would not of itself be sufficient to make a submissible case for one having the burden of proof. Kimmie v. Terminal R.R. Ass'n of St. Louis, 334 Mo., 596, 66 S.W.2d 561, 565[9–11]; Hunt v. Armour & Co., 345 Mo. 677, 136 S.W.2d 312, 316[8]; Welker v. MFA Central Co-op., Mo.App., 380 S.W. 2d 481, 486[2]; Bertram v. Wunning, Mo.App., 385 S.W.2d 803, 807[5, 6].

 Finally, appellants charge error in permitting Dr. Mendelsohn to testify that all the side effects of the drug, Enovid, are not known "when the evidence did not demonstrate Mrs. Lands was taking Enovid and when such testimony was purely speculative." Appellants' brief recites that "Mrs. Lands was given Enovid while in Jewish Hospital, seventy-one days prior to this collision," and Dr. Mendelsohn was asked, "Are all the side effects of Enovid known?" to which he answered, "Not entirely, no." Appellants argue that this was highly prejudicial as an "attempt to show Enovid as a cause of the difficulty with pregnancy and to take advantage of Religious beliefs concerning the use of Enovid among the jury."

If the doctor had undertaken to say that the drug had side effects damaging to pregnancies, his answer could have harmed plaintiffs' cases; however, he simply said the side effects were not all known. No authority is cited in support of the argument, nor is there any attempt by appellants to demonstrate the alleged prejudice.

Judgment affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

HENLEY, P. J., and SEILER and HOLMAN, JJ., concur.

STORCKMAN, J., not sitting when cause was submitted.