**STATE of Missouri, Respondent,**

v.

**Mark Anthony TRICE, Appellant.**

**No. WD 39060.**

Missouri Court of Appeals, Western District.

Jan. 26, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 1, 1988.

Application to Transfer Denied April 19, 1988.

244

Stormy B. White, Asst. Public Defender, Clayton, for appellant.

William L. Webster, Atty. Gen., Karen A. King, Asst. Atty. Gen., Jefferson City, for respondent.

Before PRITCHARD, P.J., and GAITAN and COVINGTON, JJ.

COVINGTON, Judge.

Mark Anthony Trice was convicted by a jury of two counts of involuntary man-

slaughter, § 565.024.1(2), RSMo 1986,[1] and one count of second degree assault, § 565.060.1(4). On appeal, Trice asserts three points of error regarding admission of evidence of his blood alcohol content and alleges error in admitting into evidence testimony of the existence of PCP in his urine. Judgment affirmed.

Trice drove school bus number A–522 for Parkway North High School. On November 11, 1985, between 1:30 and 1:45 p.m., individuals observed bus number A–522 travelling westbound on Interstate 70 in St. Louis County at a speed of approximately 70 to 75 miles per hour. The bus moved in an erratic manner, frequently changing lanes. At approximately 2:10 p.m., Trice entered the Parkway North High School. A student, Regina Grover, observed that defendant's eyes were red and noted that he emitted a strong odor of alcohol. At approximately 2:15 p.m., two buses, one of which was A–522, left the Parkway North High School grounds in front of oncoming traffic forcing one automobile to brake suddenly. Trice pulled out at a fast rate of speed, accelerated, and cut in front of the other bus.

Students who were passengers on the bus driven by Trice smelled alcohol on defendant's breath as they entered the bus and stated that Trice drove the bus erratically at a high rate of speed. Trice asked the students whether they wanted him to hit a green Volkswagen in the lane left of the bus. He swerved left toward the Volkswagen, swerved hard back to the right, left the roadway, and collided with a highway sign pole. The bus broke into three pieces; seats were thrown from the bus and scattered across the side of a hill. Scuff marks of 180 feet and skid marks of 19 feet were found at the scene. The accident occurred at approximately 2:45 p.m.

Kim Bogan died of a head injury sustained in the crash. Cynthia Alexander remained in a coma for a week, then died of pneumonia related to brain damage. Demetrius Johnson suffered a broken leg. All three were students and passengers on the bus.

Robert Hickman, a paramedic from Normandy Osteopathic Hospital, responded to the accident at the scene. He noticed a "very obvious" odor of alcohol on Trice's breath.

Trice was taken to Normandy Osteopathic Hospital for treatment. Four blood samples were drawn from him while in the emergency room, one taken specifically for the purpose of conducting a blood-alcohol test. The results of the test were presented through testimony of Carol Bogen, a laboratory technologist. The tests revealed that Trice's blood-alcohol level was 0.189 milligrams per deciliter. The test was performed between 3:30 and 3:35 p.m., approximately one hour after the accident.

Tim Nisbet, a St. Louis County police officer, was sent to Normandy Hospital to investigate the accident. When he communicated with Trice, he noticed a strong smell of alcohol in Trice's breath. He requested of Trice that Trice provide blood and urine samples to be analyzed for alcohol and drugs. Trice refused. After interviewing several students who had been passengers on the bus, Officer Nisbet contacted Detective Docter to request a search warrant. The warrant was served on Trice at 6:43 p.m. Dr. Jack Simons took the blood and urine samples. The blood sample was provided to the police. Officer Nisbet personally delivered the sample to the St. Louis police laboratory, marked it for identification and placed it in a locked refrigerator. The sample was tested on November 12, 1985, by Victor Granat, the crime laboratory supervisor of the St. Louis County Police Department, who held a Type I permit issued by the State of Missouri to analyze blood, saliva and/or urine for alcohol. He determined the alcohol content of Trice's blood to have been 0.09 milligrams per deciliter when the sample was taken and .15 to .17 at the time of the accident, depending upon Trice's rate of alcohol elimination.

Alfonse Poklis, Ph.D., a forensic toxicologist, testified that Trice's blood alcohol content would have been between .13 and .221

1. All statutory references are to RSMo 1986 unless otherwise noted.

at the time of the accident; Poklis' testimony was based on Mr. Granat's tests and the known range of possible elimination rates. Mr. Poklis further testified regarding the significance of the existence of a small amount of PCP in Trice's urine, indicating that the presence of PCP in the urine and the absence of PCP in the blood indicated that Trice was a casual user of PCP.

In defense, Trice elicited testimony from those who denied Trice's having an odor of alcohol about him shortly before or after the accident.

In his first point, Trice contends the trial court erred in admitting evidence of results of blood alcohol content tests because there was no proper foundation evidence that the tests were administered pursuant to requirements of § 577.037.4. The failure to comply with § 577.037.4 is mentioned by defendant for the first time on appeal and was not properly preserved for appellate review.

In his argument on his motion to suppress the results of the blood tests, Trice argued only that the state did not lay a proper foundation, specifically, in that it did not demonstrate that the blood tests conformed to the statutory requirements that

> [o]nly previously unused sterile needle and sterile vessel shall be used and withdrawal shall otherwise be in strict accord with accepted medical practices. A non-alcoholic antiseptic shall be used for cleaning the skin prior to vein puncture.

Defendant made a continuing objection during trial based upon his motion to suppress. His objection was based on § 577.029, which specifies the procedures to be followed when blood samples are taken at the request and direction of the law enforcement officer pursuant to Missouri's "Implied Consent" law, § 577.020. Neither of the two blood samples was drawn pursuant to § 577.020. The first was drawn by the hospital for medical purposes and the second pursuant to a search warrant. Where the trial objection to the admission of evidence is based upon a specific ground, and a different reason for the objection is asserted on appeal, nothing is

preserved for review. *State v. Shepard,* 681 S.W.2d 473, 475 (Mo.App.1984). To preserve a claim of error for appellate review, an objection must be made with sufficient specificity to advise the trial court of the ground or reason for the objection. *State v. Cannady,* 660 S.W.2d 33, 36 (Mo. App.1983).

Subsequently, in his motion for new trial, Trice alleged that "[t]his evidence, allegedly showing the alcohol level of .189, was improperly received, there was improper foundation, and to admit such evidence violated defendant's physician-patient privilege." The general allegation of improper foundation was not based upon a specific appropriate objection made at trial, nor was it specific enough to advise the trial court of the reason the foundation was improper. It therefore preserved nothing for appellate review. *State v. Reed,* 640 S.W.2d 188, 193 (Mo.App.1982).

Trice next alleges error in admitting into evidence the blood alcohol content obtained from the sample of blood seized pursuant to a search warrant, contending that the search warrant was issued in violation of the statutory laws of Missouri and was invalid on its face. Trice first relies on § 577.041, which provides sanctions for refusal to submit to analysis of blood or urine to determine drug or alcohol content. Trice's reliance on the statute is misplaced. Section 577.041 applies to persons under arrest who refuse to submit to a chemical test. Trice was not under arrest at the time the blood test in question was administered. *See People v. Cords,* 75 Mich.App. 415, 254 N.W.2d 911, 914 (1977).

Further, even had Trice been under arrest at the time the sample was taken and refused to submit to a test, he would have been subject to having a sample of his blood taken without his consent or a warrant. *State v. Setter,* 721 S.W.2d 11, 16 (Mo.App.1986).

As a second element of this point, Trice submits the trial court erred in failing to suppress the blood and urine samples seized pursuant to the search warrant issued because the search warrant was inval-

id on its face. He argues that § 542.271, which authorizes the state to issue search warrants, makes no provision for withdrawal of bodily fluids. Section 542.271.-1(1) provides: "A warrant may be issued to search for and seize, ... any ... substance that constitutes evidence of the commission of a criminal offense." Alcohol in the defendant's blood was such a substance. The United States Supreme Court has clearly indicated that the withdrawal of blood samples, pursuant to a search warrant, to determine the existence of alcohol in the blood is not improper. *Schmerber v. California*, 384 U.S. 757, 770, 86 S.Ct. 1826, 1835, 16 L.Ed.2d 908 (1966).

■ Trice additionally alleges the facial invalidity of the warrant because the warrant ordered any police officer to seize the blood and urine; Trice argues that blood and urine may be withdrawn only by a licensed physician, registered nurse, or trained medical technician. The warrant, as directed, complies with § 542.276.6(2) which requires that the warrant be directed to "any peace officer in the state." The blood was drawn by a licensed physician. The warrant was valid.

■ In his third point on appeal, Trice contends that the trial court erred in overruling his objection to the testimony of witnesses from Normandy Osteopathic Hospital regarding results of the blood alcohol test performed on the sample of defendant's blood drawn by hospital personnel. Trice asserts that the results of the test are privileged under the physician-patient privilege contained in § 491.060(5), and cannot be admitted into evidence. Defendant relies upon *State ex rel. Mehle v. Harper*, 643 S.W.2d 643 (Mo.App.1982), and *Gonzenbach v. Ruddy*, 645 S.W.2d 27 (Mo. App.1982), for the proposition that blood tests conducted by hospital personnel for the purpose of treatment without the request of a police officer fall within the physician-patient privilege and are not discoverable or admissible. The physician-patient privilege is statutory in origin and may be modified or abolished by the Legislature. *State ex rel. D.M. v. Hoester*, 681 S.W.2d 449, 450 (Mo. banc 1984). Subse-

quent to *Harper* and *Gonzenbach*, the legislature enacted § 577.037.1 which creates an exception to the physician-patient privilege:

Upon the trial of any person for violation of any of the provisions of section 577.-005, 577.008, 577.010, or 577.012, or upon the trial of any criminal action ... arising out of acts alleged to have been committed by any person while driving a motor vehicle while in an intoxicated condition, the amount of alcohol in the person's blood at the time of the act alleged as shown by any chemical analysis of the person's blood, breath, saliva or urine is admissible in evidence and the provisions of subdivision (5) of section 491.060, RSMo, [the physician-patient privilege] shall not prevent the admissibility or introduction of such evidence if otherwise admissible.

The plain language of the statute indicates that the exception to the physician-patient privilege contained in the statute applies to any blood alcohol test results regardless of the circumstances under which they are obtained, so long as they are otherwise admissible.

Defendant's fourth contention on appeal is that evidence of PCP (phencycliden, a Schedule I controlled substance), found in defendant's urine sample, was inadmissible, and that the trial court erred in refusing to grant a mistrial. Trice argues that such testimony constituted evidence of an unrelated crime, and, therefore, its admission into evidence was prejudicial error.

■ The granting of a mistrial, a drastic remedy, lies within the discretion of the trial court, and the appellate court determines only whether the trial court abused its discretion. *State v. Williams*, 652 S.W. 2d 102, 111 (Mo. banc 1983). There was no abuse of discretion here.

■ Although evidence of other crimes is generally inadmissible to prove the crime charged, *State v. Bannister*, 680 S.W.2d 141, 146 (Mo. banc 1984), *cert. denied*, 471 U.S. 1009, 105 S.Ct. 1879, 85 L.Ed.2d 170 (1985), evidence that is otherwise relevant should not be excluded mere-

ly because it incidentally proves the defendant guilty of another crime. *State v. Graham,* 641 S.W.2d 102, 105 (Mo. banc 1982). In this case, the use of PCP by Trice was relevant to the issue of intoxication, an element of the offense charged, and was therefore admissible. Each count against the defendant was based upon the allegation that defendant, while under the influence of alcohol, had operated a motor vehicle with criminal negligence by driving at a rate of speed too fast for conditions and failed to maintain his vehicle in the proper traffic lane. Testimony regarding PCP found in Trice's urine was offered as bearing on the issue of defendant's intoxication. Alfonse Poklis, a forensic toxicologist, testified that PCP has an enhancing effect on alcohol:

> PCP would certainly potentiate the depressant effects of alcohol or the effects of alcohol on certainly [sic] psychomotor coordination, the ability to walk, perform tasks, such as operation [sic] a motor vehicle, any complex psychomotor function.

Defendant requested a mistrial on the basis that PCP was detected only in defendant's urine and there was no evidence that PCP in the urine would enhance the effects of alcohol. An expert's view of possibility or probability of something is often helpful to the jury and proper, even though such assurance of possibility would not of itself be sufficient to make a submissible case for one having the burden of proof. *Lands v. Boyster,* 417 S.W.2d 942, 946 (Mo.1967). Mr. Poklis stated that, although the amount of PCP in Trice's blood was below the threshold of detection for the blood test used, its presence in Trice's urine indicated that some small amount was still present in the blood stream. The urine sample was taken from Trice approximately four hours following the accident. Mr. Poklis stated that the PCP level would have decreased over the four-hour period. Although Mr. Poklis could not say with absolute certainty that the amount of PCP in Trice's blood at the time of the accident would have had a significant enhancing effect on the alcohol in Trice's system, he did assert that there would have been some

small amount in Trice's blood and brain and that this residual amount of PCP could possibly have enhanced the effects of alcohol. Here, the state's case did not depend upon proof that the effects of alcohol in defendant's system had been enhanced, and the trial court did not abuse its discretion in admitting it.

Judgment affirmed.

All concur.