

# SUPREME COURT OF MISSOURI
## en banc

NICHOLAS LINTON, by and through his        )
mother and next friend, ARICA LINTON,      )
                                         )
                            Appellant,      )
                                         )
v.                                          )
                                         )
AMY S. CARTER, D.O., AND FERNS,             )
MATILE, PERRYMAN & MOORE, et al.,           )
                                         )
                  Respondents. )

*Opinion issued November 23, 2021*

No. SC98888

## APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
### The Honorable Bryan E. Round, Judge

Nicholas Linton (Linton)[1] appeals from the circuit court's judgment in favor of Dr. Amy S. Carter; Ferns, Matile, Perryman and Moore ("Ferns"); Dr. Scott E. Gray; and Saint Luke's Hospital of Kansas (collectively, "Defendants"). Linton claims the circuit court abused its discretion by allowing Dr. William Rhine, an expert witness, to testify regarding alternative causes of Nicholas' injury. Finding no abuse of discretion, this Court affirms the circuit court's judgment.

---

[1] Nicholas Linton's mother, Arica Linton, brought this action on his behalf in her capacity as next friend. For ease of reading, when referring to either Nicholas Linton or Arica Linton specifically, their first names are recited. No familiarity or disrespect is intended.

**Factual and Procedural Background**

In April 2008, Arica went into premature labor with her son, Nicholas. Dr. Carter, the obstetrician/gynecologist on call at St. Luke's, treated Arica. Finding no emergency, Dr. Carter attempted to delay Arica's labor and administered medication intended to minimize the risks to Nicholas of being born pre-term. Dr. Carter also consulted with Dr. Gray, who performed a growth ultrasound. Dr. Gray recommended Nicholas be delivered as soon as possible. Pursuant to Dr. Gray's advice, Dr. Carter planned to deliver Nicholas as soon as one of St. Luke's non-emergency procedure rooms became available.

While waiting for a non-emergency procedure room to become available, Arica's membranes containing amniotic fluid ruptured compressing the umbilical cord. Consequently, Dr. Carter transferred Arica to a procedure room and performed an emergency cesarean section. Nicholas was delivered 18 minutes after Arica's membranes ruptured. At birth, Nicholas was bluish in color with little respiratory effort and a weak cry. He was admitted to the neonatal intensive care unit because of his prematurity and respiratory distress.

Nicholas also suffered a laceration to his thigh during the cesarean section. During surgery to treat the laceration, Nicholas experienced an episode of low blood pressure and difficulty breathing, which resulted in low blood gas readings. Approximately one year later, Nicholas was diagnosed with a white matter brain injury known as periventricular leukomalacia ("PVL"). As a result of his PVL, Nicholas suffers from spastic diplegia, a form of paralysis affecting his ability to move his upper and lower extremities.

In August 2016, Linton filed his second amended petition against Defendants, alleging they failed to: (1) timely and adequately examine, diagnose, and treat the Lintons; (2) timely deliver Nicholas; (3) timely perform a cesarean section; (4) protect Nicholas from umbilical cord compression; and (5) diagnose and treat fetal distress.

Numerous depositions occurred prior to trial. Significantly, Linton deposed Dr. Rhine. Dr. Rhine is a neonatologist who testified as an expert witness on behalf of Defendants. No other neonatologist testified as an expert witness. The pertinent testimony from Dr. Rhine's deposition follows:

> [Linton's Counsel]: Do you have an opinion based upon a reasonable degree of medical certainty as to whether Nicholas Linton suffered [PVL] or injury to the white matter of his brain before birth?
> [Dr. Rhine]: No.
> [Linton's Counsel]: Do you have an opinion based upon a reasonable degree of medical certainty as to whether he suffered injury. Suffered [PVL] or injury to the white matter in his brain after the birth?
> [Dr. Rhine]: No. I know it's one of the two. I know it's one of the two, either before or after or a combination.
> [Linton's Counsel]: Do you have an opinion that you can state to a reasonable degree of medical certainty whether it is before or after or a combination?
> [Dr. Rhine]: Nope.

Based on Dr. Rhine's deposition testimony, Linton filed a motion *in limine* to prevent Dr. Rhine's alternative causation testimony. Linton argued Dr. Rhine's alternative causation testimony was not given to a reasonable degree of medical certainty. At a pretrial hearing on the motion, Defendants argued Dr. Rhine should be allowed to provide expert testimony as to alternate causes of Nicholas' injury without providing an opinion as to which cause was the actual cause. With the circuit court's approval, Defendants filed additional briefing in support of their position. Defendants claimed that, while a plaintiff's

3

expert must state the specific cause of injury to a reasonable degree of medical certainty, defense experts are not held to the same rule because they do not bear the burden of proof and need not specify the exact cause of a plaintiff's injuries. Additional argument regarding Linton's motion *in limine* was held on the morning of the first day of trial. Ultimately, the circuit court allowed Dr. Rhine to testify during trial.

Both sides presented extensive expert testimony during a two-week jury trial in 2018. In total, Defendants presented testimony from five expert witnesses, including Dr. Rhine and Dr. Paul Levinsohn. During the trial, Dr. Rhine agreed to confine his opinions to those he could state to a reasonable degree of medical certainty. Dr. Rhine provided detailed testimony disputing Linton's theory of causation.[2] For example, Dr. Rhine testified Nicholas' early breathing difficulties and appearance were typical of significantly premature newborns and not indicative of a recent brain injury. Thereafter, Defendants' counsel asked Dr. Rhine to discuss other more likely causes of Nicholas' PVL. Defendants' counsel also reiterated to Dr. Rhine that his opinions were to be confined to those he could state to a reasonable degree of medical certainty. Dr. Rhine stated, "So I wish I could tell you with certainty that I knew exactly where his [PVL] comes from, but I can't and I don't think anybody can. We have learned more over the years about this proble[m], but there are still some questions that are unanswered." Dr. Rhine then testified Nicholas' prematurity, placental abnormalities, low blood pressure and low carbon dioxide

_____

[2] Generally, Linton's theory of causation was that Defendants caused Nicholas to suffer a brain injury during birth.

4

in the blood were all potential sources of his PVL. Dr. Rhine concluded, "I can say one or more of these, I think to a reasonable medical certainty, was the cause …."

Dr. Levinsohn, a pediatric neurologist, also testified regarding alternative causes of Nicholas' PVL. Specifically, Dr. Levinsohn stated, "So it is hard to say it's one or the other, but it is clearly not something that occurred at birth and it could be one or both post-natal or intrauterine injury." Linton did not object to Dr. Levinsohn's testimony.

In closing argument, Defendants disputed Linton's theory of causation and twice mentioned Dr. Rhine's alternative causation testimony. Ultimately, the jury returned a verdict in Defendants' favor. Linton appeals.[3]

## Standard of Review

Expert testimony in civil cases is inadmissible unless it satisfies the evidentiary requirements of section 490.065.[4] *Kivland v. Columbia Orthopaedic Grp., LLP*, 331 S.W.3d 299, 310 (Mo. banc 2011). "This Court reviews a circuit court's decision to admit

---

[3] After an opinion by the court of appeals, this Court granted transfer. Mo. Const. art. V, sec. 10.

[4] All references are to RSMo Supp. 2018, unless otherwise noted. Section 490.065.2 provides, in pertinent part:

In all actions except those to which subsection 1 of this section applies:
(1) A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) The testimony is based on sufficient facts or data;
(c) The testimony is the product of reliable principles and methods; and
(d) The expert has reliably applied the principles and methods to the facts of the case[.]

5

or exclude expert testimony for an abuse of discretion." *Spalding v. Stewart Title Guar. Co.*, 463 S.W.3d 770, 778 (Mo. banc 2015).  A circuit court abuses its discretion when its "ruling is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration."  *Shallow v. Follwell*, 554 S.W.3d 878, 881 (Mo. banc 2018) (internal quotation marks omitted).  "If reasonable persons can differ as to the propriety of the trial court's action, then it cannot be said that the trial court abused its discretion."  *In re Care & Treatment of Donaldson*, 214 S.W.3d 331, 334 (Mo. banc 2007).  This Court will not reverse a "circuit court's judgment unless the error materially affected the merits of the action."  *Shallow*, 554 S.W.3d at 881.

**Analysis**

Linton claims the circuit court abused its discretion by admitting Dr. Rhine's testimony because: (1) alternative causation testimony is inadmissible; and (2) Dr. Rhine's alternative causation testimony was not given to a reasonable degree of medical certainty. Defendants reply: (1) the circuit court did not abuse its discretion because alternative causation testimony is admissible and Dr. Rhine's testimony was not contradictory; and (2) Linton failed to show Dr. Rhine's testimony resulted in prejudice.

This Court held alternative causation testimony to be admissible in both *Lands v. Boyster*, 417 S.W.2d 942 (Mo. 1967), and *Kimmie v. Terminal Railroad Ass'n of St. Louis*, 66 S.W.2d 561 (Mo. 1933).  In *Lands¸* Ms. Lands was involved in a car crash with Erastus Boyster.  417 S.W.2d at 944.  Lands went into premature labor following the crash. *Id.*  Her newborn died several hours later.  *Id.*  Lands sued Boyster, seeking to recover

6

damages for her newborn's death. *Id.* During trial, Boyster's expert witness testified Lands's preexisting medical condition could have caused her newborn's premature delivery and death. *Id.* at 945. Lands claimed the admission of Boyster's expert's testimony was in error because, among other things, "it permitted an opinion based upon mere conjecture." *Id.* This Court disagreed, stating:

> Defendant had no burden to disprove plaintiffs' case, but was entitled to show all possible causes of  Lands's condition. It was not improper, therefore, for defendant to ask his expert witness if a condition, assumed from other evidence, might, could, or would produce a certain result, because an expert's view of possibility or probability is often helpful to the jury and proper even though such assurance of possibility would not of itself be sufficient to make a submissible case for one having the burden of proof.

*Id.*

In reaching its holding, *Lands* relied on *Kimmie*. *See* 66 S.W.2d 561. In *Kimmie*, an engineer fell and was injured while working for the railroad. *Id.* The engineer subsequently developed a tumor. *Id.* at 562. The issue at trial was whether the engineer's fall caused the tumor. *Id.* at 562-63. The engineer presented expert testimony that his work-related fall "might, could, or would" have caused the tumor *Id.* at 564. Ultimately, this Court stated:

> Where there are other facts which tend to show an accident caused a certain condition, the assurance of an expert that it is scientifically possible is of some aid to the jury in determining what are reasonable inferences to be drawn from such facts. So, also, where impossibility of a claimed result is [relied] upon as a defense, expert testimony to that effect is evidence for a defendant upon that issue. Contrary evidence for the plaintiff, in such a case, of possibility would be proper because that matter would be a jury issue. Assurance of possibility is not of itself, however, sufficient to make a submissible case, upon the issue of cause and effect, for a plaintiff who has the burden of proof upon that issue. The trouble here is that there is no more than possibility shown by either the facts or the expert testimony.

7

*Id.* at 565 (internal citation omitted).

However compelling the logic of *Lands* and *Kimmie* may be, those cases predate section 490.065, which governs the admissibility of Dr. Rhine's testimony. Alternative causation testimony by an expert witness may be admitted when the testimony satisfies the requirements of section 490.065. As explained in *Lands*, alternative causation testimony can help the trier of fact understand potential causes in complex medical scenarios. 417 S.W.2d at 946; *see also* section 490.065.2(1)(a). Moreover, alternative causation testimony can satisfy the remaining requirements of section 490.065.2(1)(b)-(d). For example, assume a plaintiff was actually injured by cause A or B, yet one party is arguing the injury arose from cause C. Additionally, assume the topic is too complex for the average layperson to determine C could not have caused the injury. In this scenario, a qualified expert's application of reliable principles and methods to the facts of the case would undoubtedly help the trier of fact understand the evidence and reach the correct outcome. Although the expert could not identify whether the injury was actually caused by A or B, the expert's testimony still satisfies the requirements of section 490.065.2. In such a situation, to deny admission of the expert's testimony solely because he could not identify a single cause of injury would be a great disservice to the jury and could lead to an incorrect outcome.[5] *See also Wilder v. Eberhart*, 977 F.2d 673, 677 (1st Cir. 1992).

---

[5] The jury can consider the expert's failure to identify a single cause of injury however, when weighing the expert's credibility. *Kivland*, 331 S.W.3d at 311 ("So long as the expert is qualified, any weakness in the expert's knowledge is for the jury to consider in determining what weight to give the expert.").

While the standard to admit alternative causation testimony may apply equally to all parties, plaintiffs, not defendants, bear the burden of proof in medical malpractice cases. *See Love v. Waring*, 560 S.W.3d 614, 619 (Mo. App. 2018). In other words, a defendant does not bear the burden of disproving a plaintiff's case. *Lands*, 417 S.W.2d at 946. Consequently, any rule requiring a defendant's expert to prove a plaintiff's injury resulted from a specific cause or combination of causes would improperly shift the burden of proof to the defendant and hinder the defendant's ability to disprove the plaintiff's theory of causation.[6]

In contrast, when a plaintiff bears the burden of proving causation, "[a]ssurance of possibility is not of itself … sufficient to make a submissible case." *Kimmie*, 66 S.W.2d at 565; s*ee also State v. Trice*, 747 S.W.2d 243, 248 (Mo. App. 1988) ("An expert's view of possibility or probability of something is often helpful to the jury and proper, even though

---

[6] The United States Court of Appeals properly analyzed this issue when it stated:

> Were we to accept plaintiff's argument that once a plaintiff puts on a prima facie case, a defendant cannot rebut it without proving another cause, the resulting inequities would abound. For example, if ninety-nine out of one hundred medical experts agreed that there were four equally possible causes of a certain injury, A, B, C and D, and plaintiff produces the one expert who conclusively states that A was the certain cause of his injury, defendant would be precluded from presenting the testimony of any of the other ninety-nine experts, unless they would testify conclusively that B, C, or D was the cause of injury. Even if all of defendant's experts were prepared to testify that any of the possible causes A, B, C or D, could have equally caused plaintiff's injury, so long as none would be prepared to state that one particular cause, other than that professed by plaintiff more probably than not caused plaintiff's injury, then defendant's experts would not be able to testify at all as to causation. We think that such a result does not reflect the state of the law in New Hampshire, and furthermore would be manifestly unjust and unduly burdensome on defendants.

*Wilder*, 977 F.2d at 677.

9

such assurance of possibility would not of itself be sufficient to make a submissible case for one having the burden of proof."). Accordingly, when presenting an expert's alternative causation testimony, a plaintiff must provide additional evidence establishing causation. *See Bertram v. Wunning*, 385 S.W.2d 803, 807 (Mo. App. 1965) (finding expert testimony that the accident "could be" the cause of the plaintiff's injury, was not, standing alone, substantial evidence of a causal connection between the injury and the accident required for submission of issue of causation to the jury); s*ee also Tharp v. St. Luke's Surgicenter-Lee's Summit, LLC*, 587 S.W.3d 647, 659-60 (Mo. banc 2019) ("[L]iability cannot rest upon guesswork, conjecture or speculation beyond inferences reasonably to be drawn from the evidence.") (alteration in original) (quoting *Probst v. Seyer*, 353 S.W.2d 798, 802 (Mo. 1962)). For example, in *Waters v. Meritas Health Corp.*, 478 S.W.3d 448, 460 (Mo. App. 2015), none of the plaintiff's experts testified to a reasonable degree of medical certainty that the defendant had caused the plaintiff's husband's death. Therefore, although the experts' testimonies were admissible, the court of appeals held the plaintiff "failed to provide substantial evidence from which a jury could have concluded that [the defendant's action] caused or contributed to [the plaintiff's husband's] death." *Id.* at 461.

Having laid out the general rule that an expert's alternative causation testimony may be admitted, the next question is whether Dr. Rhine's alternative causation testimony should have been admitted. Unsurprisingly, Linton contends Dr. Rhine's testimony should not have been admitted. In support of his argument, Linton relies on a brief portion of Dr. Rhine's deposition testimony wherein he stated he could not give an opinion to a

reasonable degree of medical certainty whether Nicholas' injury was specifically caused before birth, after birth, or by some combination of the two.[7]

The relevant portion of Dr. Rhine's deposition testimony follows:

[Linton's Counsel]: Do you have an opinion based upon a reasonable degree of medical certainty as to whether Nicholas Linton suffered periventricular leukomalacia or injury to the white matter of his brain before birth?
[Dr. Rhine]: No.
[Linton's Counsel]: Do you have an opinion based upon a reasonable degree of medical certainty as to whether he suffered injury . . . periventricular leukomalacia or injury to the white matter in his brain after the birth?
[Dr. Rhine]: No. I know it's one of the two. I know it's one of the two, either before or after or a combination.
[Linton's Counsel]: Do you have an opinion that you can state to a reasonable degree of medical certainty whether it is before or after or a combination?
[Dr. Rhine]: Nope.

However, contrary to Linton's assertions, every causation opinion Dr. Rhine offered was both in conformance with section 490.065 and given to a reasonable degree of medical certainty. All that can be gleaned from Dr. Rhine's deposition answers is that he could not specifically state whether Nicholas' injuries were caused by events solely before his birth, or after his birth, or by some combination of the two. At trial, Dr. Rhine elaborated on his challenged deposition answers when he stated, "I interpreted your question as, can you tell which of those three options it was and I told you then and I'm telling you and the jury now that I can't." Nothing about Dr. Rhine's deposition answers or his subsequent explanation provides evidence his alternative causation testimony was either in violation of section 490.065 or not given to a reasonable degree of medical certainty. Instead, the

---

[7] Again, Dr. Rhine agreed to confine all of his opinions to those he could state to a reasonable degree of medical certainty.

11

record is replete with proof that Dr. Rhine, a qualified expert, applied reliable principles and methods to the facts of Linton's case that could help the trier of fact understand why Nicholas' injury may have been caused before or after birth, as opposed to during his birth. Challenges to Dr. Rhine's failure to identify a sole cause of Nicholas' injury go to the weight of his testimony, which is a matter for the jury. *See Kimmie*, 66 S.W.2d at 564.

Moreover, the circuit court was in the best position to determine whether to admit or exclude Dr. Rhine's testimony based on the alleged inconsistencies between his deposition and trial testimony. *See Spalding*, 463 S.W.3d at 778. This is necessarily a fact-specific, discretionary determination. Given Dr. Rhine's detailed answers and overall testimony, it cannot be said the circuit court's action was against the logic of the circumstances or so arbitrary and unreasonable as to shock the sense of justice. *Shallow*, 554 S.W.3d at 881. Accordingly, the circuit court did not abuse its discretion in admitting Dr. Rhine's alternative causation testimony.[8]

Finally, even if Dr. Rhine's alternative causation testimony was improper, its admission would not require reversal because Linton failed to establish prejudice. Significantly, Dr. Levinsohn testified, without objection, to the same alternative causation opinions as Dr. Rhine. "A party cannot be prejudiced by the admission of allegedly

---

[8] In addition, Linton's claims that Dr. Rhine failed to use the magic words—to a reasonable degree of medical certainty—are of no merit. As this Court has stated, "the precise words used by an expert witness do not necessarily render his testimony inadmissible if he intended to express his opinion or judgment." *Bynote v. Nat'l Super Markets, Inc.*, 891 S.W.2d 117, 125 (Mo. banc 1995) (internal quotation marks omitted). The totality of Dr. Rhine's testimony makes it clear his opinions were given to a reasonable degree of medical certainty. *See also Kircher v. Purina Mills, Inc.*, 775 S.W.2d 115, 117 n.2 (Mo. banc 1989).

inadmissible evidence if the challenged evidence is merely cumulative to other evidence admitted without objection." *Swartz v. Gale Webb Transp. Co.*, 215 S.W.3d 127, 134 (Mo. banc 2007) (quoting *In re Estate of Looney*, 975 S.W.2d 508, 514-15 (Mo. App. 1998)). Moreover, contrary to Linton's claims, the record firmly establishes Dr. Rhine's alternative causation testimony was only a minor portion of a very lengthy trial. *Bell v. Redjal*, 569 S.W.3d 70, 85 (Mo. App. 2019) (explaining expert testimony, including causation evidence, is not viewed in a vacuum).

## Conclusion

For the reasons set forth above, the circuit court's judgment is affirmed.

_____
Robin Ransom, Judge

Wilson, C.J., Russell, Breckenridge, Fischer
and Draper, JJ., and Gardner, Sp.J., concur.
Powell, J., not participating.