**STATE of Missouri, Appellant,**

v.

**James Lee LERETTE, Jr., Respondent.**

**No. WD 47179.**

Missouri Court of Appeals,
Western District.

Aug. 3, 1993.

---

Jeremiah W. (Jay) Nixon, Atty. Gen., Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for appellant.

William J. Esely, Bethany, for respondent.

Before TURNAGE, P.J., and BRECKENRIDGE and SPINDEN, JJ.

TURNAGE, Presiding Judge.

James Lee LeRette, Jr., was charged with driving a motor vehicle while intoxicated. Before trial, LeRette filed a motion to suppress the results of a blood alcohol analysis of a sample of LeRette's blood. The trial court sustained the motion apparently on the ground that the blood sample was taken without LeRette's consent and because LeRette had not been arrested prior to the taking of the blood sample. On appeal, the State contends that the warrantless seizure of the blood sample was permissible because of exigent circumstances. Reversed.

On July 17, 1992, at approximately 9:30 p.m., Trooper Kevin Fender was called to respond to a one-car accident on Route N in Harrison County about 3 miles east of Blythedale. When Fender arrived at the scene, LeRette was being loaded into an ambulance. Fender testified that LeRette appeared to be conscious at that time but did not talk with him.

Fender remained at the scene and spoke with Brian Halter, a passenger in the vehicle who indicated that LeRette had been driving the car at the time of the accident. Fender testified that he found several beer cans among the wreckage debris, including a partially full beer can in a Budweiser "coolie" holder which was found next to the wrecked vehicle. After talking with Halter and taking some measurements at the scene, Fender went to the hospital to see if he could speak with LeRette.

Fender arrived at the hospital within an hour of the accident and found LeRette in a bed with a tube down his throat. Fender testified that at that time, he did not know whether LeRette was conscious or unconscious but that he was unable to communicate with LeRette and, as such, was unable to obtain consent to take a blood sample. Thereupon, Fender directed a hospital employee to take a blood sample from LeRette. The blood alcohol test later revealed that LeRette's blood alcohol level was .11%. Fender testified that because there was some uncertainty as to whether LeRette would live or die, no arrest was made until a month later.

LeRette filed a motion to suppress the results of the blood alcohol test which the trial court sustained and the State appealed.

On appeal, the State contends that the seizure of the blood sample was permissible under the "exigent circumstances" exception to the Fourth Amendment search warrant requirement. LeRette claims, however, that the blood test results were properly excluded from evidence because LeRette had not been arrested prior to the taking of the blood sample in violation of Missouri's Implied Consent law, § 577.020, RSMo 1986, which requires both probable cause to believe the person driving the

vehicle was intoxicated and an arrest. LeRette also claims that the seizure of his blood sample without his consent was an unreasonable search and seizure in violation of both the state and federal constitutions. However, LeRette's argument that the taking of the blood sample violated Missouri's Implied Consent law is misplaced because the State is not attempting to justify the search under implied consent, but rather under the "exigent circumstances" exception to the search warrant requirement.

The case which the trial court relied upon, *State v. Copeland*, 680 S.W.2d 327 (Mo.App.1984), does not address the issue of exigent circumstances but rather addresses the issue of implied consent under Missouri law. Moreover, the court in *Copeland* specifically noted that it was not addressing the issue of whether a person must always be arrested as a prerequisite to having blood taken. *Id.* at 331. The issue before this court is whether the taking of LeRette's blood sample without consent falls under the exigent circumstances exception to the warrant requirement.

In *Schmerber v. California*, 384 U.S. 757, 771, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the United States Supreme Court held that a police officer was not required to secure a search warrant before instructing medical personnel to draw a blood sample despite the arrested suspect's express refusal to submit to such test. *Id.* Although the *Schmerber* ruling was primarily couched in terms of the "search incident to arrest" exception, there were also exigent circumstances present in that any delay caused by having to obtain a warrant would have "threatened the destruction of evidence." *Id.* at 770, 86 S.Ct. at 1835 (quoting *Preston v. United States*, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964)). Although *Schmerber* involved a situation where the defendant had been arrested by police before being required to submit to a blood test, that holding has also been construed as an application of the exigent circumstances exception to the warrant requirement. *U.S. v. Berry*, 866 F.2d 887, 891 (6th Cir.1989).

"[A]bsent a valid arrest, the minimum constitutional requirements for a warrantless search are probable cause that incriminating evidence will be found and exigent circumstances justifying the search." *Berry*, 866 F.2d at 891 (citing *Chambers v. Maroney*, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970)). In *Berry*, the court upheld the warrantless taking of a defendant's blood sample as permissible based upon the exigent circumstances exception. *Id.* The facts in *Berry* are nearly identical to those in the instant case: the defendant was involved in a serious and inexplicable single-car accident and taken to the hospital where he remained either unconscious or semiconscious at all times; the police officer arrived at the scene of the accident shortly after its occurrence and spoke with a witness before going to the hospital to see if he could speak with the defendant; the officer had probable cause to believe that the defendant was under the influence of alcohol; the officer directed a hospital employee to take a sample of the defendant's blood for evidence; and the defendant had not been placed under arrest prior to the taking of the blood sample and was unable to consent because he was at all times either unconscious or semiconscious. *Id.* at 888–89.

The court in *Berry* noted that although "*Schmerber* cast its decision in terms of the 'search incident to arrest' exception to the warrant requirement ... [w]e believe, however, that *Schmerber* can be read as an application of the exigent circumstances exception to the warrant requirement." *Id.* at 891 [citations omitted]. In determining that there was no constitutional violation in the warrantless taking of the blood sample, the court in *Berry* reasoned that since the police officer had probable cause to believe that the defendant was under the influence of alcohol and "[b]ecause evidence of intoxication begins to dissipate promptly, it is evident in this case that there were exigent circumstances indicating the need to take such action." *Id.*

The Fourth Circuit also recently held that a warrantless search for alcohol intoxication would be permissible under the exi-

gent circumstances exception and noted that:

> Time is of the essence when testing for alcohol in the bloodstream. The combination of these factors sets out exigent circumstances which are sufficient to require that the police be allowed to test drunk drivers without first having to obtain a warrant.

*U.S. v. Reid,* 929 F.2d 990, 994 (4th Cir. 1991).

Although the defendants in *Reid* were lawfully arrested at the time they were searched, and as such, the searches were valid as incident to an arrest, the court also acknowledged that the police had sufficient probable cause to believe that the defendants were intoxicated and the warrantless searches were also valid under the exigent circumstances exception. *Id.* at 994.

This court finds *Berry* to be persuasive and that this case should be decided under the exigent circumstances exception to the search warrant requirement. The record reveals that when Trooper Fender arrived at the scene of the accident, he spoke with the passenger in the vehicle who smelled of intoxicants and who indicated that LeRette had been driving the car at the time of the accident. Fender also found several beer cans strewn among the wreckage debris including a partially full beer can in a Budweiser "coolie" holder next to the wrecked vehicle. The record further reveals that the accident involved a single vehicle driven by LeRette that for no apparent reason ran 30 feet off the roadway, rolling and flipping over and resulting in serious injuries to LeRette. Considering that Fender was aware of all of this evidence after he arrived at the scene, he had ample cause to believe that LeRette was under the influence of alcohol while he was driving his car at the time of the accident. These facts establish that Fender had probable cause to believe that incriminating evidence would be found if LeRette's blood were tested.

Fender testified that when he arrived at the hospital, he found LeRette in bed with a tube down his throat. Fender also testified that he did not know whether LeRette was conscious or unconscious, but he was unable to communicate with LeRette and, as such, was unable to seek his consent for a blood test.

Considering that the percentage of alcohol in the bloodstream diminishes with time and that the delay caused by having to obtain a warrant might result in the destruction of evidence, this court finds that there were exigent circumstances warranting Fender's actions and, as such, it would have been unreasonable to require him to take the time to obtain a search warrant.

Fender's failure to arrest LeRette before directing hospital personnel to take the blood sample is not determinative here because both prongs of the exigent circumstances exception were established—probable cause that incriminating evidence would be found and exigent circumstances justifying the search. For that reason, the trial court erred in sustaining the motion to suppress evidence of the result of the blood tests.

The order sustaining LeRette's motion to suppress is reversed. On remand, the court shall allow into evidence the results of the blood test.

All concur.