**STATE of Missouri, Plaintiff–Respondent,**

v.

**Patrick L. EDMONDS, Defendant–Appellant.**

No. 26554.

Missouri Court of Appeals, Southern District, Division One.

March 15, 2006.

Motion for Rehearing or Transfer Denied April 6, 2006.

Application for Transfer Denied May 2, 2006.

■

**Joe ADAMS, Appellant,**

v.

## ORDER

Amy M. Bartholow, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for respondent.

NANCY STEFFEN RAHMEYER, Presiding Judge.

Patrick Edmonds ("Appellant") was charged with and convicted of one count each of forcible rape, forcible sodomy, and incest with his daughter, J.E. ("Victim"). He waived jury sentencing and was sentenced to concurrent sentences of twenty-three years on the rape and sodomy convictions and a four-year concurrent sentence on the incest conviction. He brings three points in this appeal: first, he challenges the selection of one of the jurors on the basis of juror nondisclosure; second, he claims a deputy sheriff should not have been allowed to testify that Appellant refused to answer a particular question asked of him by the deputy; and, third, he claims testimony that Appellant had never offered an apology to his daughter violated his right not to not incriminate himself. This appeal does not contest the sufficiency of the evidence to support his convictions and extended discussion of the facts would serve no purpose. Suffice it to say, ample evidence supported the convictions that Appellant raped and sodomized his biological daughter. Any other facts will be presented as necessary for an aid in the discussion of Appellant's points.

Initially, Appellant contends the trial court erred in overruling his motion for a new trial based upon juror misconduct because one of the jurors ("Juror P") failed to disclose during voir dire that his daughter had been a victim of rape. Prior to a discussion of whether there was an intentional nondisclosure, we need to address exactly what was the claimed nondisclosure. If it is that Juror P's daughter was the victim of a rape, there is no factual basis anywhere in the record for that claim.

■ Appellant claimed in his motion for a new trial that Juror P stated during jury deliberations, "a relative of his had been a victim of a sex crime." In Appellant's offer of proof in the motion for new trial, he offered the testimony of a fellow juror ("Juror S") that "when [Juror P] was living in Texas, I don't know if it was his daughter or some of his relation was involved in a similar situation as [Appellant's] case." In contrast, Juror P testified at the motion for a new trial[1] that he did

---

1. Juror P was allowed to testify subject to an objection that it was an improper impeach- ment of the verdict.

not have a close family member who was sexually abused, but that he did have a daughter that "got inebriated on a date and the young boy went for something he shouldn't have. And that was the end of it." He further testified he did not ask for the boy to be charged with any crime because his wife and daughter did not feel there was anything to do in that respect. He brought the incident up in the jury room to make a point that it is hard for a young victim to come forward.

The testimony of the two jurors has now been elevated in this appeal "from a daughter or some relative in a similar situation" or a "young boy went for something he shouldn't have" to the rape of Juror P's daughter. Indeed, in his argument, Appellant states, "[Juror P] took the stand and admitted that his daughter was a rape victim who had difficulty coming forward." Appellant contends in his argument that "testimony alone is sufficient to reverse the case for juror misconduct." The fact that there is no factual basis for a claim that Juror P's daughter was the victim of rape alone merits a denial of Point I; however, we further find, as the able trial court did, that the Appellant's allegations of an intentional nondisclosure had no factual basis in the record and were simply an improper attempt to impeach the verdict of the jury.

■■■ We review the trial court's finding regarding the grant of a new trial for an abuse of discretion. *State v. Mayes*, 63 S.W.3d 615, 625 (Mo. banc 2001). In determining whether to grant a new trial, the court must determine whether a nondisclosure occurred at all, and, only then, whether it was intentional or unintentional. *Id.* "Nondisclosure occurs only after a party asks a clear question." *Wingate by Car-*

*lisle v. Le ster E. Cox Med. Ctr.*, 853 S.W.2d 912, 916 (Mo. banc 1993).

Appellant fails to point to any specific question which it claims Juror P failed to answer. Instead, Appellant claims, even though a specific question was not asked, a variety of questions were posed to the venire panel, which were designed to elicit the venire members' "feelings" about the sexual nature of the charged crime. He directs our attention to two specific questions of the prosecutor. Appellant claims the question was whether anyone had been the victim of a criminal offense; however, the actual question asked was, "Has anyone been a victim of a criminal offense? I'm going to leave out of this any questions about any sexual offenses because I think we covered that earlier. Leaving aside any sexual offenses has anyone been a victim of any kind of criminal activity?" Juror P did answer that question as he had been robbed.

Appellant next argues the prosecutor's question whether anyone felt that society is not doing enough to protect the rights of women and girls in sexual offense situations should have warranted a response by Juror P. To come to that determination, Appellant relies upon a claim by Juror S that Juror P stated during deliberations that he intentionally did not disclose information during voir dire. The testimony of Juror S [2] was that

> when [Juror P] was in Texas that there was an incident that happened that kept him from responding to some of the questions that was ask [sic] to the—when they was selecting the jurors. . . . [H]e said the reason he didn't respond to some of the questions was because that [sic] he wanted to be on the jury.

2. The testimony was given pursuant to an offer of proof, which was ultimately rejected by the trial court.

██ Appellant mistakenly relies upon the testimony of Juror S to claim bias on the part of Juror P. Appellant may not use the testimony of a fellow juror to attack the claimed bias of a juror based upon statements made within the jury room. " 'The rule is perfectly settled, that jurors speak through their verdict, and they cannot be allowed to violate the secrets of the jury room, and tell of any partiality or misconduct that transpired there, nor speak of the motives which induced or operated to produce the verdict.' " *State v. Stillings*, 882 S.W.2d 696, 701 (Mo.App. S.D.1994) (quoting *State v. Babb*, 680 S.W.2d 150, 152 (Mo. banc 1984)). Whether jurors acted on improper motives, reasoning, beliefs, or mental operations are matters inherent in the verdict. *Williams v. Daus*, 114 S.W.3d 351, 369 (Mo.App. S.D.2003).

It is clear that Appellant's allegations are simply an attack on the motives and bias of Juror P. This, we cannot permit. Juror P was never asked a clear question to which a response was warranted. The trial court did not err in finding Juror P had not intentionally, or otherwise, concealed any information during voir dire. We find that the alleged "misconduct" in this case comes squarely within the general rule that no one is competent to impeach a verdict and that this is simply an improper attempt to impeach the verdict. Point I is denied.

██ Appellant next complains that the court erred in overruling his motion to suppress the testimony by Deputy Martin ("Deputy") of the pre-arrest silence of Appellant. Deputy testified that a couple of days after receiving a report from the victim, he arrived at Appellant's home unarmed and wearing plain clothes; he was driving his personal car, identified himself, and asked to visit with Appellant about some allegations concerning his daughter. Appellant invited Deputy into the house to sit at the breakfast-bar area. Appellant was advised that he did not have to talk to Deputy if he did not want to, that he had the right to have an attorney present before being asked any questions and, if at any point in time he wanted Deputy to leave, all he had to do was say so and Deputy would leave. Appellant was not given the full range of *Miranda* warnings[3] because the interview was happening at his own house and Deputy did not plan to take him into custody at that time.

Appellant answered most of the questions asked by Deputy and volunteered information, including his drinking problem and that he considered himself an alcoholic. He claimed that on the night in question he had drunk to the point where he passed out. The last thing Appellant could remember was watching movies on television that night and then waking the next morning around 6:30 to go to work. Deputy then testified as follows:

[Prosecutor]: After asking him whether or not he could remember anything between watching movies and getting up at 6:30, immediately after that what did you ask him? [Deputy]: I asked him if he remembered having sex with [Victim].

[Prosecutor]: And what reaction or response did he make?

[Deputy]: There was a large pause, probably close to a minute, and he told me that he didn't want to answer that question.

[Prosecutor]: What did you say to that?

[Deputy]: I asked him why he didn't want to—yeah, asked him why he didn't want to answer it. And he said he just didn't want to answer it.

---

**3.** *Miranda v. Arizona*, 384 U.S. 436, 467–73, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[Prosecutor]: Did you ask him that question about sexual intercourse with [Victim] again, later?

[Deputy]: Yes, I did.

[Prosecutor]: And what kind of response did he have then?

[Deputy]: He said that he was not going to talk about that question, but he would be happy to talk about anything else.

Deputy asked Appellant whether he could search Appellant's residence, to which Appellant declined, and no search was done. When Deputy got up to leave, Appellant asked him if he had time to stay and talk to him for a little bit. Appellant said he did not really have any friends, did not have anybody he could talk to, and felt he needed to talk to someone. He further told Deputy he had a problem, that he needed some help and did not know what to do about it or how to go about getting help.[4] Appellant was not arrested after the conversation.

To be clear, in this appeal Appellant does not complain about any of the actual statements he made to Deputy; he only complains that the testimony that he was silent and chose not to answer particular questions was an inappropriate comment on Appellant's invocation of his right to remain silent. Appellant argues that the admission of Appellant's pre-arrest silence violated his Fifth Amendment privilege and, although not given the entire *Mi-*

*randa* warnings, his silence was preceded by implicit assurances contained in the partial declaration of the *Miranda* warnings and, thus, his pre-arrest silence was inadmissible to prove guilt.[5]

This court's review of a trial court's decision concerning a motion to suppress is limited to a determination of whether there is substantial evidence to support its decision. *State v. Burkhardt,* 795 S.W.2d 399, 404 (Mo. banc 1990). The facts and any reasonable inferences arising therefrom are to be stated most favorable to the order challenged on appeal. *State v. Blankenship,* 830 S.W.2d 1, 14 (Mo. banc 1992). An appellate court will not reverse the trial court's decision on a motion to suppress unless it is clearly erroneous. *State v. Milliorn,* 794 S.W.2d 181, 183 (Mo. banc 1990).

Although Appellant notes the split in the federal decisions regarding pre-arrest silence, we note that in Missouri evidence of a defendant's silence or refusal to answer questions is only disallowed if the defendant was in custody. *State v. Kinder,* 942 S.W.2d 313, 326 (Mo. banc 1996); *State v. Simmons,* 955 S.W.2d 752, 764 (Mo. banc 1997). "Pre-arrest silence is admissible over a Fifth Amendment objection." *State v. Davis,* 963 S.W.2d 317, 327 (Mo.App. W.D.1997). Although acknowledging that the Western district of this Court in *State v. Case,* 140 S.W.3d 80 (Mo.App. W.D.2004), opined that Missouri

4. All of the above testimony was heard at the motion to suppress hearing. The actual question asked and objected to at trial was:

[Prosecutor]: All right. Now ... [d]id you ask any particular question at that point of [Appellant]?

. . . .

[Deputy]: I asked Mr. Edmonds if he recalled having sex with his daughter that evening?

[Prosecutor]: And what kind of reaction or response did he have?

[Deputy]: There was a long pause, probably near a minute long. And [Appellant] told me he didn't think he wanted to answer that question.

5. Appellant does not cite to any cases for the proposition that a partial declaration of *Miranda* warnings creates an implicit assurance that Appellant could invoke his right to remain silent by choosing which questions to answer. We consider the argument abandoned and do not address it further.

has adopted the minority view that a defendant's pre-arrest silence is admissible in the State's case-in-chief, Appellant claims *Case* was incorrect to place dispositive emphasis on previous Missouri cases because of factual dissimilarities and because the previous Missouri cases did not involve silence in the face of direct accusations of guilt.

█ Although Appellant invites us to distinguish the line of Missouri cases, we shall follow the holding in *Case* that a defendant's pre-arrest silence is admissible as substantive evidence of guilt. *Id.* at 90. That decision indicates that pre-arrest silence is admissible over a Fifth Amendment objection. Appellant was not in custody at any time during the interview. Furthermore, Appellant voluntarily talked with Deputy about anything but that one question; thus, the trial court did not err in denying the motion to suppress. Point II is denied.

Lastly, Appellant posits trial court error in allowing the prosecutor to elicit testimony from the victim that her father had never apologized for what he did to her and to use that testimony in closing argument because it violated Appellant's right not to incriminate himself, was tantamount to a refusal to admit guilt, and was highly prejudicial. Appellant argues that the logical conclusion of the mandates of the Fifth and Fourteenth Amendments forbids the testimony because Appellant is being penalized for maintaining his innocence and refusing to express remorse by remaining silent. We review both the testimony and the closing argument for plain error as no objection was made to either.

█ Plain error review should be used sparingly and does not justify a review of every alleged trial error that has not been properly preserved for appellate review. *State v. McMillin*, 783 S.W.2d 82, 97 (Mo. banc 1990). A plain error is one

that must impact so substantially upon the rights of the defendant that manifest injustice or a miscarriage of justice will result if left uncorrected. *State v. Driscoll*, 711 S.W.2d 512, 515 (Mo. banc 1986). We look for plain errors which are evident, obvious and clear. *State v. Hibler*, 21 S.W.3d 87, 96 (Mo.App. W.D.2000). We find none here.

█ The complained of question by the prosecutor and answer by the victim were: "[Prosecutor]: And down to today's date, has your dad ever apologized to you? [Victim]: Never." The criticized statements of the prosecutor in closing argument were: "Did he say, honey, I'm so sorry. I don't know what I was thinking. No. Told her to get dressed before her grandma gets here with her pill. Callous? That doesn't begin to describe it. He knew what he was doing to his daughter and he didn't care." We find no manifest injustice or miscarriage of justice. Appellant admitted to Deputy that he purchased liquor for his sixteen-year-old daughter and her friend; he admitted that as a result of this, his daughter drank so much that she got sick and was carried by Appellant to his bed. Appellant's defense was that he passed out drunk and woke up naked in bed next to his daughter but he had not engaged in any sexual activity with her; his attorney in his closing argument claimed that alone was an embarrassing and humiliating experience, but that there was no physical evidence that a rape occurred.

The question posited by the prosecutor and the remark in the closing argument regarding Appellant's apparent lack of remorse was certainly ambiguous. If the jury did not believe that a rape occurred, the question, answer and comment could certainly have referred to Appellant's purchase of liquor, the encouragement in get-

ting his daughter drunk, or the embarrassment and humiliation of a father and daughter being naked in the same bed the following morning. A daughter might be owed an apology for any of these things. One question, one answer and one closing comment did not rise to the level of depriving defendant of a fair trial. *See State v. Richardson*, 923 S.W.2d 301, 311 (Mo. banc 1996) (holding that reversal is warranted only if the admitted evidence was so prejudicial that it deprived the defendant of a fair trial). Point III is denied. The judgment is affirmed.

PARRISH, J., McGHEE, Senior Judge, concur.