**STATE of Missouri, Plaintiff–Respondent,**

**v.**

**Gregory ALLEN, Defendant–Appellant.**

**No. SD 28656.**

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 5, 2009.

---

Emmett D. Queener, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jonathan H. Hale, Jefferson City, for Respondent.

NANCY STEFFEN RAHMEYER, Judge.

Gregory Allen ("Appellant") appeals from his conviction for possession of methamphetamine with intent to distribute. He filed a motion to suppress evidence on the grounds that "any alleged consent was not voluntary and understandingly and knowingly given." Appellant's motion was overruled. Based upon his motion to suppress, Appellant objected at trial to the admission of evidence. Appellant renewed his challenge to the admission of evidence in his motion for a new trial, thus preserving the issue for appeal. *State v. McClanahan,* 202 S.W.3d 64, 70 (Mo.App. S.D. 2006).

When reviewing a trial court's decision on a motion to suppress, we only inquire whether or not there is substantial evidence to support its decision. *State v. Edmonds,* 188 S.W.3d 119, 124 (Mo.App. S.D.2006). We state the facts and any reasonable inferences in the light most favorable to the trial court's ruling on the motion to suppress. *Id.* We give deference to the trial court's credibility determinations, but "whether the Fourth Amendment was violated is a question of law that the appellate court reviews *de novo.*" *City of Springfield v. Hampton,* 150 S.W.3d 322, 325 (Mo.App. S.D.2004).

■ In the light most favorable to the trial court's ruling, the facts indicate Appellant visited Amy Jo Dean Rig's ("Rig") apartment occasionally and stayed the night one or two days a week.[1] On May 25, 2003, based on a tip that there was drug activity in Rig's apartment, two uni-

---

1. The ability to assert a claim for a Fourth Amendment violation depends upon Appellant's legitimate expectation of privacy in the location allegedly violated. *State v. Breese,* 250 S.W.3d 413, 419 (Mo.App. S.D.2008). The United States Supreme Court has noted factors to be used to determine if a legitimate expectation of privacy exists:

    (1) whether the person has key [sic] to apartment; (2) kept possessions at the apartment; (3) had control over the apartment; and (4) could exclude others from the apartment. Criteria used by other courts include: (1) intention of parties; (2) length of time; (3) regular or continuous presence; (4) exclusive use of area within residence; (5) whether possessions are stored in residence; (6) receipt of mail; (7) contribution to upkeep of residence; and (8) relationship of blood or marriage. *See People v. White,* 117 Ill.2d 194, 111 Ill.Dec. 288, 294, 512 N.E.2d 677, 683 (1987).

    *State v. Corpier,* 793 S.W.2d 430, 436 n. 3 (Mo.App. W.D.1990) (citing *Rakas v. Illinois,* 439 U.S. 128, 131, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)). The evidence shows that Appellant stayed with Rig at the apartment one or two days a week, and he had spent the night the two nights prior to the search. The State did not challenge Appellant's ability to challenge the search and seizure in either the trial court or on appeal; therefore, we will not review the issue on appeal because it is fact intensive and was not argued in the trial court.

formed police officers, Officer Clawson and Officer Fugget, went to talk to the occupants of Rig's apartment, where Appellant was staying. The officers identified themselves to Rig and told Rig that they had received a tip that someone in the apartment was involved with drugs; Officer Clawson then asked Rig if there were any drugs in the apartment. When Rig replied that there were no drugs in the apartment, Officer Clawson told Rig that in these situations the officers usually ask for consent to search the person's home to see if the person is telling the truth or not. Rig told Officer Clawson that she had company and it was not a good time. Officer Clawson continued to talk to Rig and learned that Rig's son had been in the officer's D.A.R.E. class. She told Rig that she believed there were drugs in the house, that children should not be around drugs, and if there was just some marijuana or a pipe in the house the police would just take it and write Rig a "ticket" to appear in court.

Rig told Officer Clawson that she had a marijuana pipe in the apartment and would go in the apartment and get it but requested that the officers remain outside. Officer Clawson told Rig that she and Officer Fugget would "like to go with her" for the safety of the officers and to prevent the destruction of evidence. Rig explained that a guest, other than Appellant, was on parole. Officer Clawson said that she was not interested in anyone else in the apartment; she just wanted the pipe. Rig allowed the officers inside her apartment.

Officer Clawson followed Rig to the back bedroom, while Officer Fugget remained in the living room with two other people in the apartment. As Officer Clawson entered the bedroom, Appellant exited the closet. Rig opened the drawer of a night stand beside the bed and quickly removed a marijuana pipe. Officer Clawson asked Rig if there was any marijuana in the drawer, and Rig said, "No."

Officer Clawson asked Rig if she could search the drawer, and Rig allowed her to perform the search. Inside the drawer, Officer Clawson found a white bottle with an orange cap. Officer Clawson opened the bottle and found a white powder. Rig told Officer Clawson that the powder was "cut," a substance drug dealers mix with a drug to make it go farther, but not methamphetamine.

Officer Clawson told Rig that because she found more than what Rig admitted to having, Rig either needed to consent to a search of her apartment or Officer Clawson would get a search warrant. Rig signed a consent to search form, which Officer Clawson stated "explains the rights, that they're allowed to refuse us consent to search, that they are giving the right to search a designated spot to a certain group of people." The search revealed, in addition to other incriminating evidence, a substance later determined to be 8.89 grams of methamphetamine. Rig later told the police that she had an agreement with Appellant to distribute methamphetamine.

■ Appellant's sole point relied on is that the trial court erred in overruling his motion to suppress and his objections to the evidence at trial because Rig's consent to the officers' entry into the apartment and subsequent search were invalid because she merely acquiesced to a show of authority. Appellant claims that Rig's consent to enter the apartment was conditional: only to get the marijuana pipe. Appellant further claims that Officer Clawson's efforts were directed toward getting into the house to search for incriminating evidence with which to either secure additional consents for continued searches or which would justify the officers to seek a search warrant to search Rig's apartment

without her consent. Appellant concludes that because Officer Clawson allegedly had a different motive for entering the apartment than merely obtaining the marijuana pipe, she knowingly exceeded the scope of Rig's conditional consent, making it invalid.

■■■■ The United States Constitution and the Missouri Constitution both protect individuals from unreasonable searches and seizures. *State v. Deck*, 994 S.W.2d 527, 534 (Mo. banc 1999), *rev'd in part on other grounds, Deck v. State*, 68 S.W.3d 418 (Mo. banc 2002). In general, "searches conducted without a valid search warrant are unreasonable" and unconstitutional. *State v. Sullivan*, 49 S.W.3d 800, 813 (Mo.App. W.D.2001). A search conducted with proper consent, however, is an exception to the general rule and is constitutional. *State v. Cromer*, 186 S.W.3d 333, 347 (Mo.App. W.D.2005). Proper consent must be voluntarily given. *Id.* Consent is voluntary if an objective observer, considering the totality of the circumstances, would find that consent was given by a free and unconstrained choice. *Id.* A number of factors are commonly used to determine if consent was voluntarily given, including: "(1) the number of officers present; (2) the degree to which the officers emphasized their authority; (3) whether weapons were displayed; (4) whether the officers were misleading or fraudulent; and (5) evidence regarding what was said or done by the person giving the consent." *Id.* Consent, however, is involuntary if the officer "has reason to know that the consent was not knowingly granted." *State v. Earl*, 140 S.W.3d 639, 641 (Mo.App. W.D.2004).

Appellant claims his position is supported by *Earl*. In *Earl*, a police officer asked defendant to consent to a search of his person. *Id.* at 640. Defendant asked the officer why he wanted to search him

and the officer told him that he had probable cause. *Id.* Defendant told the officer, "If you've got that then go ahead." *Id.* The court found defendant's consent to be limited to the condition where the officer did have probable cause. *Id.* The court stated that the officer knew he did not have probable cause; therefore, he could not reasonably believe that defendant had knowingly consented. *Id.* at 641. The court then affirmed the trial court's decision to suppress the evidence found on defendant's person. *Id.*

Appellant argues that this case is like *Earl* because Rig's consent was conditional on a fact that Officer Clawson knew to be false: Officer Clawson's statement that she was only interested in the marijuana pipe. Specifically, Appellant argues that Officer Clawson's efforts were directed toward getting into the apartment to search for incriminating evidence with which to either secure additional consent for continued searches or which would justify the officers to seek a search warrant to search Rig's apartment without her consent. Appellant concludes that because Officer Clawson secured Rig's consent by claiming that she only wanted to enter the apartment to seize the marijuana pipe, she had to know that Rig's consent was not freely and voluntarily given. We disagree.

Two uniformed officers spoke with Rig about drug activity inside her apartment for what appears from the record to be some time. They told Rig that they wanted to search the apartment to determine if there was drug activity but did not represent that they had the authority to search. There was no evidence that the officers' weapons were displayed. Rig eventually indicated that she had a marijuana pipe and would go in the apartment and get it but requested that the officers remain outside. Officer Clawson then told Rig that she would "like to go with her" for officer

safety and to prevent the destruction of evidence. Rig explained that a guest, other than Appellant, was on parole. Officer Clawson said that she was not interested in anyone else in the apartment; she just wanted the pipe. Rig allowed the officers into her apartment, and the officers did not question the guest on parole.

One officer, Officer Clawson, followed Rig into the bedroom. After seeing Rig open a drawer and quickly remove the marijuana pipe, the officer then asked for further consent to search the same drawer. Rig granted the request. The officer found "cut" in the drawer and then asked Rig to sign a consent to search form to allow the officers to search the entire apartment. Rig was told she had the right to refuse to give consent for any further searches.

An objective observer would find that the officers entered the apartment to ensure their safety and prevent the destruction of the marijuana pipe and only asked for consent to search additional areas of the apartment as the circumstances changed. We do not, nor can we, divine an ulterior motive on the part of Officer Clawson in her request for consent to search first the drawer and then the apartment. The trial court did not err in finding the consent to be voluntarily given. After Rig was given *Miranda*[2] warnings and told she had a right to refuse the consent, she gave a free and voluntary consent. The consent was not conditional or limited.

The judgment is affirmed.

LYNCH, C.J., PARRISH, J., concur.

---

2. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).