STATE of Missouri, Appellant,

v.

Neil E. DOWDY, Respondent.

No. SD 30381.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 19, 2011.

Chris Koster, Atty. Gen., Jayne T. Woods, Asst. Atty. Gen., Jefferson City, for Appellant.

Tyson J. Martin, Catt, Cole and Martin, LLC, Springfield, for Respondent.

DANIEL E. SCOTT, Chief Judge.

Neil Dowdy ("Defendant") was charged with second-degree murder, armed criminal action, and unlawful use of a weapon for possessing a firearm while intoxicated. Defendant moved to suppress the results of a warrantless breath test of his blood alcohol content on the grounds that the search and seizure violated his federal and state constitutional rights.[1]

1. Our state constitutional protections against unreasonable search and seizure are coexten- sive with the Fourth Amendment, so the same

Following a hearing, the trial court granted Defendant's motion and suppressed the evidence because:

> Absent case authority from the U.S. Supreme Court or an appeals court in Missouri approving the taking of a blood sample in a non-DWI case as constitutional either as incident to an arrest or under the exigent circumstances exception to the warrant requirement, the court declines to approve the practice.[2]

 The State appeals. We defer to the trial court's factual findings and credibility determinations and consider all evidence and reasonable inferences in the light most favorable to its ruling. *State v. Sund*, 215 S.W.3d 719, 723 (Mo. banc 2007). Whether the Fourth Amendment was violated, however, is a legal issue that we determine *de novo*. *Id.*

## Facts and Background

A residential altercation culminated in Defendant fatally shooting his wife's son at approximately 11:30 p.m. Officers were dispatched, with Captain Gideon arriving "[s]omewhere in the midnight hour. Give or take a few minutes." Defendant was already under arrest and in the back of a patrol car. Captain Gideon gave orders to perform a gunshot residue analysis, transport Defendant to the jail, and obtain a breath test of his blood alcohol level because Defendant displayed signs of intoxication at the crime scene.

It took about 45 minutes to transport Defendant, who was bleeding from the face and mouth, to the jail. After he arrived at 1:18 a.m., he was booked and advised that his blood alcohol level was needed to ensure that medical treatment was not necessary. Defendant later indicated that he was told (not asked) to blow into a breathalyzer, which he did at 1:53 a.m. He was not read Miranda warnings[3] before the test or given an option about submitting to it, and officers never sought a search warrant.[4]

## Case Law

Various Missouri cases, only one of which was cited to the trial court and then only in passing, indicate that it was error to suppress this evidence.

 "[U]pon his arrest and as an incident to his arrest without a warrant, [a] person is subject to having a sample of his blood taken without his consent or a warrant, and said blood sample is admissible in evidence." *State v. Setter*, 721 S.W.2d 11, 16 (Mo.App.1986)(citing *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)).

"*Schmerber* supports the general principle that the warrantless extraction of a blood sample without consent but *incident to a lawful arrest* is not an unconstitutional search and seizure and that the results of a blood test performed thereon are admissible in evidence." *State v. Ikerman*, 698 S.W.2d 902, 904–05 (Mo.App.1985).

To like effect are these cases:

- *State v. Trice*, 747 S.W.2d 243, 246 (Mo.App.1988)—"Further, even had Trice been under arrest at the time

---

analysis covers both claims. *See State v. Oliver*, 293 S.W.3d 437, 442 (Mo. banc 2009).

**2.** This case actually involves a breath test, not (as the trial court indicated) a blood sample, but that does not materially affect our analysis.

**3.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**4.** At the suppression hearing, Captain Gideon was asked whether a warrant would have taken too much time. He replied that he would have sought a warrant had Defendant refused breath testing.

the sample was taken and refused to submit to a test, he would have been subject to having a sample of his blood taken without his consent or a warrant," citing *Setter*.

- *State v. LeRette*, 858 S.W.2d 816, 818–19 (Mo.App.1993)—applied exigent circumstances exception to reverse trial court suppression of blood alcohol testing obtained without defendant's consent, citing *Schmerber*.

- *Murphy v. Director of Revenue*, 170 S.W.3d 507, 514 (Mo.App.2005)—"In *LeRette* we recognized that the warrantless draw of blood, without consent, does not violate the Fourth Amendment's prohibition of unreasonable seizure when exigent circumstances exist. 858 S.W.2d at 819. Exigent circumstances arise from the need to move quickly because 'the percentage of alcohol in the bloodstream diminishes with time and … the delay caused by having to obtain a warrant might result in the destruction of evidence.' *Id.*"

- *Blydenburg v. David*, 413 S.W.2d 284, 288 (Mo. banc 1967)—breath tests are reasonable and, unlike blood tests approved in *Schmerber*, do not require even minor intrusions into one's body.

### Conclusion

*Schmerber*, in our supreme court's words, "has established controlling constitutional standards for determining the admissibility of the results of a similar sobriety test as evidence in a criminal case." *Blydenburg*, 413 S.W.2d at 287. The principles expressed in that case and others we have cited persuade us to reverse the suppression order and remand for further proceedings consistent with this opinion.

RAHMEYER, P.J., dissents in separate opinion.

BATES, J., concurs.

NANCY STEFFEN RAHMEYER, Presiding Judge, dissenting.

I respectfully dissent. If we consider the facts in the light most favorable to the ruling, as we must under our standard of review, I would find no exception to the warrant requirement applies to this case. The trial court found that "[a]bsent case authority from the [Supreme Court of the United States] or an appeals court in Missouri approving the taking of a blood sample in a non-DWI case," and declined to approve the practice. While the majority opinion states, "[v]arious Missouri cases, only one of which was cited to the trial court and then only in passing, indicate that it was error to suppress this evidence," I disagree that the various cases hold in a non-driving case that it was error to suppress the evidence.[1] I believe, as both parties stated, that this is a case of first impression in Missouri. As such, I would not casually extend the exceptions to the Fourth Amendment to non-driving cases. I would find that Defendant did not consent, exigent circumstances for the search did not exist, and the search was not incidental to arrest.

First, it would be helpful to review our standard of review and pertinent case law to determine this issue. "The burden of going forward with the evidence and the risk of nonpersuasion" at a suppression hearing are "upon the state to show by a preponderance of the evidence that the motion to suppress should be overruled."

---

1. I believe it is inappropriate to take the State to task for supposedly only citing one case "in passing." We only know what was on the record. We have no information as to what cases the State or the court referred to off the record.

Section 542.296.6;[2] *State v. Hampton*, 959 S.W.2d 444, 450 (Mo. banc 1997). The ruling will be affirmed if it is not clearly erroneous. *State v. Hoopingarner*, 845 S.W.2d 89, 92 (Mo.App. E.D.1993). We review the trial court's factual determinations only in determining whether they are supported by substantial evidence. *Id.* The facts are viewed in the light most favorable to the ruling, and we disregard any contrary evidence and inferences. *Id.* Whether the Fourth Amendment has been violated is a question of law we review *de novo*. *State v. Sund*, 215 S.W.3d 719, 723 (Mo. banc 2007).

The United States Constitution and the Missouri Constitution protect individuals from unreasonable searches and seizures.[3] *State v. Oliver*, 293 S.W.3d 437, 442 (Mo. banc 2009). Specifically, the Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated...." U.S. CONST. AMEND. IV. For the purposes of Fourth Amendment analysis, a breath test is a search. *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 616–17, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989). A search conducted without a valid warrant is unconstitutional unless an exception applies. *State v. Sullivan*, 49 S.W.3d 800, 813 (Mo.App. W.D. 2001). Consent, exigent circumstances, and searches incident to arrest are recognized exceptions to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) ("[O]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent."); *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 298–99, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (Exigent circumstances applied because "[s]peed here was essential, and only a thorough search of the house for persons and weapons could have insured that [the defendant] was the only man present and that the police had control of all weapons which could be used against them or to effect an escape."); *United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) (The fact of a lawful arrest establishes the authority to search, and in the case of a lawful arrest a full search of the person is a reasonable search under the Fourth Amendment.).

In the light most favorable to the trial court's ruling, the facts indicate that on the evening of December 3, 2008, Defendant was involved in an altercation at his residence with his wife's son, Del Moore, that resulted in Moore hitting Defendant and Defendant fatally shooting Moore at approximately 11:30 p.m. Paramedics and the Stone County Sheriff's Department (the "Department") were dispatched to the scene.

Three witnesses testified at the suppression hearing. Captain Tim Gideon and Deputy Chris Sowards testified for the State, while Defendant testified in his own defense. Captain Gideon arrived at the scene "[s]omewhere in the midnight hour. Give or take a few minutes." By the time Captain Gideon arrived, Defendant was already under arrest and in the back of a patrol car, on suspicion of being the suspect in the shooting. Captain Gideon ordered a deputy to perform a gunshot residue analysis on Defendant, then to transport Defendant to the Stone County jail and requested his deputies to se-

---

**2.** All references to statutes are to RSMo 2000 unless otherwise specified.

**3.** The state and federal guarantees are coextensive. *State v. Rushing,* 935 S.W.2d 30, 34 (Mo. banc 1996).

cure a breath sample to obtain evidence of Defendant's blood alcohol level because deputies at the scene indicated Defendant displayed signs of intoxication. Defendant was also bleeding from the face and mouth.

Defendant was transported from the scene to the jail around 12:30 a.m., and arrived at 1:18 a.m. After being booked into jail,[4] Defendant was informed of the need to know his blood alcohol level to ensure medical treatment was not necessary. Deputy Sowards did not give Defendant an option in submitting to the breath test. Defendant did not recall the deputy ever asking him to blow into the breathalyzer; rather, the deputy told him to blow into the breathalyzer. Prior to taking the breath test, Defendant was not given Miranda warnings.[5] Before directing Defendant to take the breath test, the Department did not obtain, or attempt to obtain, a search warrant. Defendant took the breath test at 1:53 a.m. Captain Gideon, when asked if obtaining a search warrant would have taken too much time, replied that if Defendant refused to give a breath sample, he would have obtained a search warrant.

### A. Consent

For the consent exception to apply, proper consent must be voluntarily given. *State v. Allen*, 277 S.W.3d 314, 317 (Mo. App. S.D.2009). "Consent is voluntary if an objective observer, considering the totality of the circumstances, would find that consent was given by a free and unconstrained choice." *Id.* "The test applied to determine if consent is free and voluntary is whether, in light of the totality of the circumstances, consent was given without coercion, express or implied." *United States v. Sanders*, 424 F.3d 768, 773 (8th Cir.2005). Whether consent was voluntary or the product of duress or coercion "is a question of fact to be determined from the totality of the circumstances." *State v. Petrone*, 836 S.W.2d 484, 488 (Mo.App. S.D.1992).

The following factors are among those commonly used to determine if consent was voluntarily given: "(1) the number of officers present; (2) the degree to which the officers emphasized their authority; (3) whether weapons were displayed; (4) whether the officers were misleading or fraudulent; and (5) evidence regarding what was said or done by the person giving the consent." *State v. Cromer*, 186 S.W.3d 333, 347 (Mo.App. W.D.2005). Two additional factors include whether the individual from whom consent was requested was in custody when the request was made and whether the individual was intoxicated. *United States v. Smith*, 260 F.3d 922, 924 (8th Cir.2001) (Environmental factors relevant to the issue of the voluntariness of a defendant's consent to search include, among other things, the length of time the defendant was detained and whether the defendant "was in custody or under arrest when the consent was given."); *United States v. Watters*, 572 F.3d 479, 483 (8th Cir.2009) ("Factors relevant to the voluntariness of a defendant's consent include whether the defendant was intoxicated, but intoxication alone does not render consent invalid."). Consent is involuntary if the officer "has reason to know that the consent was not knowingly granted." *State v. Earl*, 140 S.W.3d 639, 641 (Mo.App. W.D. 2004). Lastly, the State must show more than mere acquiescence to a claim of lawful authority to show valid consent. *State v. Reese*, 625 S.W.2d 130, 132 (Mo. banc 1981).

---

4. This process required Defendant to forfeit his clothes and wear a jail uniform.

5. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The trial court's finding that Defendant did not voluntarily consent to providing a breath sample to the Department is amply supported by evidence. Defendant was handcuffed and arrested, taken to jail, booked, where he was stripped of his clothes and required to put on a jail uniform; Defendant was then told he had to provide a breath sample to determine whether he needed medical treatment. Specifically, consent to the search was not free from coercion because the deputy conveyed to Defendant that compliance was required and Defendant acquiesced to the deputy's claim of lawful authority. There was evidence that the officers admitted that Defendant had no choice but to take the breath test. Such facts, considered in the totality of the circumstances, preclude us from finding that the trial court erred in finding no consent.

### B. Search Incident to an Arrest

A search incident to an arrest is an exception to the Fourth Amendment's warrant requirement that allows officers to search a person and the area within his immediate control without a warrant. *State v. Williams*, 978 S.W.2d 454, 459 (Mo.App. E.D.1998). One rationale justifying the exception is the need to prevent the destruction of evidence. *State v. Achter*, 512 S.W.2d 894, 900 (Mo.App. Spfd.D.1974). A search is incident to an arrest only if conducted substantially contemporaneously in time and place with the arrest unless a valid reason for the delay is provided. *Id.* at 901; *United States v. Willis*, 37 F.3d 313, 318 (7th Cir.1994) (finding that a search must be contemporaneous with the arrest to be valid).

I would find no error in denying the search as valid under the search incident to an arrest exception to the Fourth Amendment warrant requirement. The majority cites *State v. Setter*, 721 S.W.2d 11, 16 (Mo.App. W.D.1986), for the proposition that upon arrest and as an incident to an arrest without a warrant, a person is subject to having a sample of his blood taken without consent and the blood sample is admissible in evidence. Although the statement quoted is contained in the *Setter* opinion, the majority ignores the facts and holding of *Setter*. Setter was charged with manslaughter following an accident where he was allegedly driving while in an intoxicated condition. *Setter*, 721 S.W.2d at 14. The first issue presented in *Setter* was whether section 577.039 applies to arrests for involuntary manslaughter. *Id.* at 14–16. That issue has no relevance to this case. The second issue presented was whether the warrantless administration of the blood alcohol test was constitutionally permissible. *Id.* at 17. The court specifically noted that any contention concerning a constitutional violation was meritless because

> there was no violation of respondent's rights because there is no showing he was denied the right to consult an attorney. Absent respondent's request (it was shown on the record that the officer advised respondent of his right to counsel as per the *Miranda* warning) to consult an attorney and a denial of such, there was no violation of respondent's rights.

*Id.* at 17. In this case, the majority opinion acknowledges that Defendant was not read the Miranda warnings nor given an option about submitting to the test.

Most importantly, *Setter* cites for its authority regarding blood tests *State v. Ikerman*, 698 S.W.2d 902 (Mo.App. E.D. 1985), and *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). *Id.* at 15–18. *Schmerber* and *Ikerman* involve driving while intoxicated offenses. In *Schmerber*,

Petitioner was convicted in Los Angeles Municipal Court of the criminal offense of driving an automobile while under the influence of intoxicating liquor. He had been arrested at a hospital while receiving treatment for injuries suffered in an accident involving the automobile that he had apparently been driving. At the direction of a police officer, a blood sample was then withdrawn from petitioner's body by a physician at the hospital. The chemical analysis of this sample revealed a percent by weight of alcohol in his blood at the time of the offense which indicated intoxication, and the report of this analysis was admitted in evidence at the trial. Petitioner objected to receipt of this evidence of the analysis on the ground that the blood had been withdrawn despite his refusal, on the advice of his counsel, to consent to the test.

*Schmerber*, 384 U.S. at 758–59, 86 S.Ct. 1826 (footnotes omitted). The issue presented was "whether the chemical analysis introduced in evidence in this case should have been excluded as the product of an unconstitutional search and seizure." *Id.* at 766–67, 86 S.Ct. 1826. In deciding to allow the evidence, the Supreme Court of the United States used the following rationale:

We begin with the assumption that once the privilege against self-incrimination has been found not to bar compelled intrusions into the body for blood to be analyzed for alcohol [content], the Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner. In other words, the questions we must decide in this case are whether the police were justified in requiring petitioner to submit to the blood test, and whether the means and procedures employed in taking his blood respected relevant Fourth Amendment standards of reasonableness.

In this case, as will often be true when charges of driving under the influence of alcohol are pressed, these questions arise in the context of an arrest made by an officer without a warrant. Here, there was plainly probable cause for the officer to arrest petitioner and charge him with driving an automobile while under the influence of intoxicating liquor. The police officer who arrived at the scene shortly after the accident smelled liquor on petitioner's breath, and testified that petitioner's eyes were 'bloodshot, watery, sort of a glassy appearance.' The officer saw petitioner again at the hospital, within two hours of the accident. There he noticed similar symptoms of drunkenness. He thereupon informed petitioner 'that he was under arrest and that he was entitled to the services of an attorney, and that he could remain silent, and that anything that he told me would be used against him in evidence.'

. . . .

Although the facts which established probable cause to arrest in this case also suggested the required relevance and likely success of a test of petitioner's blood for alcohol, the question remains whether the arresting officer was permitted to draw these inferences himself, or was required instead to procure a warrant before proceeding with the test.

. . . .

The officer in the present case, however, might reasonably have believed that he *was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence,'* Preston v. United States, 376 U.S. 364,

367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777[ (1964) ]. We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system. Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant. *Given these special facts*, we conclude that the attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to petitioner's arrest.

*Id.* at 768–71, 86 S.Ct. 1826 (footnotes omitted) (emphasis added).

Likewise, Ikerman was involved in a traffic accident and refused the blood test; he was then advised of his Miranda rights and eventually agreed to give a blood sample. *Ikerman,* 698 S.W.2d at 904. Even so, the trial court suppressed the blood sample. *Id.* at 903. The State appealed arguing that *Schmerber* provided that "where police officers have probable cause to believe defendant has committed a crime in which intoxication is an element and exigent circumstances exist, the taking of a blood sample in a reasonable manner without consent, warrant, or arrest is constitutionally permissible." *Id.* at 904. The appellate court affirmed the suppression of the evidence, after assuming Ikerman had been arrested, and specifically noted that Ikerman had been given his Miranda rights, requested counsel and then was ignored in that request. *Id.* at 905, 907. Again, in this case, Defendant was not even given any Miranda warnings prior to the breath test.

The majority also cites to *Blydenburg v. David,* 413 S.W.2d 284, 285–86 (Mo. banc

1967), and *Murphy v. Dir. of Revenue,* 170 S.W.3d 507, 508 (Mo.App. W.D.2005); both are civil license revocation cases of people accused of driving while intoxicated, and, therefore, by their own terms, are wholly inapplicable to this case. Furthermore, in one of those cases, *Blydenburg,* no blood or breath test was ever taken from the allegedly drunk driver. 413 S.W.2d at 286. Likewise, *State v. Trice,* 747 S.W.2d 243 (Mo.App. W.D.1988), is completely inapposite. Even though the court in dicta, and citing *Setter,* stated that Trice would have been subject to having a sample of his blood taken without his consent or a warrant, the facts are that the blood alcohol test was taken *pursuant to a search warrant* and the court found that Trice was not even under arrest, thus not implicating section 577.041. *Id.* at 246.[6]

Defendant was already under arrest when Captain Gideon arrived at the scene "[s]omewhere in the midnight hour. Give or take a few minutes." Defendant was arrested prior to midnight and told to take the breath test two hours later. The search was too remote in time to be incidental to arrest and no valid reason for delay of the breath test was offered. As the trial judge aptly noted the lack of case authority for the taking of a blood sample in a non-DWI case, I too would not expand the "incident to an arrest" exception.

### C. Exigent Circumstances

The third exception to the constitutional requirement for a search warrant, raised in this appeal, is when there are "exigent circumstances." "Exigent circumstances exist when there is a compelling need for official action and no time to secure a warrant." *United States v. Marshall,* 157

---

**6.** As noted above, *Setter* involved a manslaughter charge resulting from a defendant allegedly driving while in an intoxicated condition; the defendant was also Mirandized. 721 S.W.2d at 12.

F.3d 477, 482 (7th Cir.1998). "Exigent circumstances are situations where 'real immediate and serious consequences will certainly occur if a police officer postpones action to obtain a warrant.'" *United States v. Williams*, 354 F.3d 497, 503 (6th Cir.2003) (quoting *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002)).[7] "Where there are exigent circumstances in which police action literally must be 'now or never' to preserve the evidence of the crime, it is reasonable to permit action without prior judicial evaluation." *Roaden v. Kentucky*, 413 U.S. 496, 505, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973). The government bears the burden of proving the existence of an exigent circumstance to justify a warrantless search. *United States v. Wicks*, 995 F.2d 964, 970 (10th Cir.1993). "[T]he determination of whether exigent circumstances are present is individually analyzed on a case-by-case basis." *State v. Cook*, 273 S.W.3d 562, 570 (Mo.App. E.D.2008).

The majority opinion also cites to *State v. Lerette*, 858 S.W.2d 816 (Mo.App. W.D. 1993). *Lerette* cites to *Schmerber*'s special facts and lack of time to seek out a magistrate and search warrant. *Id.* at 818. Here, the trial court was free to make the determination that there was adequate time to seek out a magistrate and obtain a warrant. I believe *Lerette*, as well as the other cited cases, stand more for the proposition of limiting Fourth Amendment exceptions to driving cases rather than extending them. In *Lerette*, the Western District of this Court stated: "Time is of the essence when testing for alcohol in the bloodstream. The combination of these factors sets out exigent circumstances which are sufficient to require that the police be allowed to test drunk drivers without first having to obtain a warrant." *Id.* at 818–19 (quoting *United States v. Reid*, 929 F.2d 990, 994 (4th Cir.1991)).

In *Reid*, the Fourth Circuit framed the expanded exception in terms of the tragedy inherent in drinking and driving:

Drunk driving is a grave problem in society today. The Supreme Court has "repeatedly lamented the tragedy." *South Dakota v. Neville*, 459 U.S. 553, 558, 103 S.Ct. 916, 920, 74 L.Ed.2d 748 (1983). "No one can seriously dispute the magnitude of the drunken driving problem or the states' interest in eradicating it. Media reports of alcohol-related deaths and mutilation on the Nation's roads are legion." *Michigan State Police v. Sitz*, 496 U.S. 444, 110 S.Ct. 2481, 2485, 110 L.Ed.2d 412 (1990).

*Reid*, 929 F.2d at 993.

Here, the trial court heard evidence that a call was placed to the police department and the sheriff's department and paramedics arrived at Defendant's home between 11:30 p.m. and 12:30 a.m. Defendant was arrested during that time period and transferred to jail at 12:30 a.m. Defendant arrived at jail at 1:18 a.m. The breath test was not given until 1:53 a.m. In the light most favorable to the ruling, the State had two hours to obtain a search warrant. The State has not shown that "real immediate and serious consequences" would "certainly occur" if they postponed action to obtain a warrant and failed to secure a breath test from Defendant without obtaining a warrant. *See Williams*, 354 F.3d at 503 (discussing the real immediate and serious consequences certain to occur standard in exigent circumstances analysis). The facts as the trial court found them did not present a literal "now or never" preservation of evidence issue.

---

**7.** We note that *Williams*, 354 F.3d at 503, discussed the risk of danger category of exigent circumstances. Likewise, *Marshall*, 157 F.3d at 482, discussed whether exigent circumstances were involved in a warrantless entry case.

Most importantly, I see no compelling reason to extend the application of Fourth Amendment warrant exceptions to a breath test aimed at discovering alcohol evidence in a non-driving case, without thoughtful consideration of the consequences. The case law cited by the majority all involve the operation of a motor vehicle while intoxicated. I do not believe the cases can be said to present a compelling argument for extension of the Fourth Amendment exceptions at play in this case. I disagree with the majority's analysis insofar as it seemingly attempts to create a single-factor exigency exception to the search warrant requirement any time alcohol is believed to be a factor in a crime.

I would affirm the suppression of the breath test.